IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| UNITED FIRE & CASUALTY COMPANY, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. MO:17-CV-00023-RAJ |
| | § | |
| KENT DISTRIBUTORS, INCORPORATED, | § | |
| *Defendant.* | § | |

## <u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

BEFORE THE COURT is Plaintiff and Counter-Defendant United Fire & Casualty Company's ("United Fire") Motion for Summary Judgment Against Defendant and Counter-Claimant Kent Distributors, Incorporated ("Kent"). (Doc. 9). After due consideration, United Fire's Motion for Summary Judgment shall be **GRANTED**.

## I.   BACKGROUND

United Fire brings this action seeking a declaratory judgment that it has no duty to defend and indemnify Kent from an underlying lawsuit in state court under the primary and excess insurance policies that United Fire issued to Kent. (Doc. 1). United Fire issued a commercial general liability policy, Policy No. CGL-60405920 ("CGL Policy"), and a commercial liability umbrella policy, Policy No. CU-60405920 ("Umbrella Policy") to Kent Distributors Inc. d/b/a Kent Kwik Convenience Stores. (Doc. 10 at Exs. A & B). Both the CGL Policy and Umbrella Policy had a policy period effective August 1, 2014, to August 1, 2015. (*Id.*).

On August 5, 2016, Shlana Mitchell ("Mitchell") filed her Original Petition and Request for Disclosure against Kent in Cause No. CV52563 in the 238th Judicial District Court of Midland County, Texas. (Doc. 10 at Ex. C). Mitchell was employed by Kent as a store clerk in Midland, Texas. (*Id.*). While locking the store at closing time, Mitchell was allegedly attacked and sexually assaulted by a co-employee of Kent. (*Id.*). Mitchell claims Kent negligently hired, retained, trained, and supervised its employees, failed to identify the threat posed by the co-employee, failed to warn

Mitchell of the threat, and failed to correct the dangerous condition.  (*Id*.).  As a proximate result of Kent's negligence, Mitchell claims she sustained personal injuries.  (*Id*.).

On January 31, 2017, United Fire filed its Original Complaint for Declaratory Judgment. (Doc. 1).  On January 31, 2017, Kent filed its Original Answer and Original Counterclaim.  (Doc. 6). Kent claims that United Fire's CGL Policy and Umbrella Policy provide coverage for the claims asserted against Kent in the Mitchell suit and brings counterclaims for declaratory judgment and breach of policy against United Fire.  (*Id*.).  The Court has subject-matter jurisdiction predicated upon diversity of citizenship and an amount in controversy in excess of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.

On August 23, 2017, United Fire filed its Motion for Summary Judgment.  (Doc. 9).  United Fire asks the Court to (1) declare that United Fire does not have a duty to defend Kent in the underlying suit; (2) declare that United Fire does not have a duty to indemnify Kent for any damages, interest, or costs assessed against Kent in favor of Mitchell; (3) dismiss Kent's counterclaims for declaratory judgment and breach of policy; and (4) award United Fire all of its attorneys' fees and costs it has incurred in prosecuting this lawsuit and defending against Kent's counterclaim.  (Doc. 9). On September 11, 2017, Kent filed its Response to the Motion for Summary Judgment.  (Doc. 12). On September 18, 2017, United Fire filed its Reply to Kent's Response.  (Doc. 13).

On December 8, 2017, Mitchell filed her First Amended Petition in the underlying state court action. (Doc. 14-1).  On December 19, 2017, Kent filed its Supplemental Response to the Motion for Summary Judgment.  (Doc. 14).  On December 26, 2017, United Fire filed its Second Reply Brief in Support of Its Motion for Summary Judgment.  (Doc. 15).  Based on the allegations in the Amended Petition, United Fire argues its Motion for Summary Judgment should be granted because the claims asserted in the underlying lawsuit are unambiguously excluded by the Employer's Liability, Texas Abuse or Molestation, and Punitive or Exemplary Damages Exclusions in the primary and excess insurance policies that United Fire issued to Kent.  (*Id*.).  This matter is now ready for disposition.

## II.   LEGAL STANDARD

Federal rules govern procedural requirements for a summary judgment motion filed in a federal case, irrespective of the basis for the court's jurisdiction.  *Doe v. Doe*, 941 F.2d 280, 287 (5th Cir. 1991).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co*., 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which facts are material.  *Anderson*, 477 U.S. at 248.  The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*. at 247.

If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986).  But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."  *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).  The nonmovant must adduce affirmative evidence.  *Anderson*, 477

U.S. at 257. The Court need only consider the record materials actually cited by the parties, though the Court may consider the entire record. Fed. R. Civ. P. 56(c)(3).

Jurisdiction in this case is founded on diversity of citizenship, so Texas law governs the interpretation of the insurance contracts at issue. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996). Under Texas law, when a court analyzes an insurance policy, it is guided by the principles of contract construction. *State Farm Lloyds v. Page*, 315 S.W. 3d 525, 527 (Tex. 2010). The court's primary goal is to determine the parties' intent by focusing on the language within the four corners of the written agreement. *Id.* The court "must read all parts of the contract together, giving effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative." *Id.* (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)). A court "must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *Beaston*, 907 S.W.2d at 433.

The issue of whether a contract contains an ambiguity is a question of law. *Page*, 315 S.W.3d at 527. The parties' disagreement about the policy's meaning does not create an ambiguity. *Id.* Rather, a policy is ambiguous when it is subject to more than one reasonable interpretation. *Id.* "[A]mbiguity must be evident from the policy itself; it cannot be created by introducing evidence of intent." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006).

A court should enforce an unambiguous contract as written. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). An unambiguous contract should be construed according to the plain meaning of its express wording. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985). "When the terms of an insurance policy are unambiguous. . . a court may not vary those terms." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995) (citing *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965)).

### III.   DISCUSSION

The primary issue in the pending Motion for Summary Judgment is whether the United Fire CGL Policy and Umbrella Policy require United Fire to defend Kent in a separate suit between Mitchell and Kent.  This issue requires the Court to determine whether the Employer's Liability, Texas Abuse or Molestation, and Punitive or Exemplary Damages Exclusions in the primary and excess insurance policies exclude coverage.  For the reasons discussed below, the Court determines that United Fire does not have a duty to defend or indemnify Kent in the underlying lawsuit. Accordingly, United Fire's Motion for Summary Judgment shall be **GRANTED**.  (Doc. 9).

### A.   Duty to Defend

United Fire seeks a declaration that it does not have a duty to defend Kent in the Mitchell lawsuit.  Under Texas law, an insurer's duty to defend is determined by the "eight corners" rule, which focuses on the language in the insurance policy and a "'liberal' construction of the allegations [in the lawsuit] against the insured, that if true, potentially state a cause of action covered by the policy."  *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004); *Zurich Am. Ins. Co. v. Nokia, Inc*., 268 S.W.3d 487, 491 (Tex. 2008) ("an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy's provisions, without regard to the truth or falsity of those allegations") (internal quotation marks omitted).  A court should first identify the relevant allegations in the four corners of the pleading in the underlying lawsuit against the insured.  *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 457 (5th Cir. 2011).

"[T]he court must focus on the factual allegations that show the origin of the damages rather than the legal theories advanced."  *Id*. at 456.  Then, the Court should determine whether those allegations, if true, support a claim for coverage under the insurance policy.  *Id*. at 456–57.  "All doubts regarding the duty to defend are resolved in favor of the insured."  *Id*. at 456.  The insured has the initial burden to establish that there is coverage under the policy.  *Guar. Nat'l Ins. Co. v. Vic Mfg.*

*Co.*, 143 F.3d 192, 193 (5th Cir. 1998).   Then, the burden shifts to the insurer to prove the applicability of any exclusions to the policy.   *Id.*   If the insurer satisfies this burden, then the insured has the burden to show that its claim falls within an exception to the exclusion.   *Id.*

Here, neither party argues that the insurance policies at issue are ambiguous, so they should be enforced as written.   *Heritage Res., Inc.*, 939 S.W.2d a 121.   The first step under the eight corners rule is to identify the factual allegations—rather than the legal theories advanced—in the underlying suit against the insured.   *VRV Dev. L.P.*, 630 F.3d at 457.   The focus is on the origin of the damages asserted.   *Id.* at 456.

In Mitchell's First Amended Petition she states that whenever "in this petition it is alleged that [Kent] committed any act or omission, it is meant that [Kent's] officers, directors, vice-principals, members, managers, general partners, agents, servants, and/or employees committed such act or omission and that, at the time such act or omission was committed, it was done with the full authorization, ratification, or approval of [Kent] or was done in the routine and normal course and scope of employment of [Kent's] officers, directors, vice-principals, members, managers, general partners, agents, servants, and/or employees."   (Doc. 14-1 at 3).   On August 13, 2014, Mitchell alleges she was employed by Kent as a store clerk working at Kent Kwik #309 located at 4701 Briarwood Avenue, Midland, Midland County, Texas 79707.   (*Id.*).   While alone locking the store at closing time, Mitchell claims she "was attacked and sexually assaulted by a co-employee of [Kent] who was employed at a different location."   (*Id.* at 3–4).   According to Mitchell, Kent "had knowledge of the dangerous nature of the attacker well before the incident occurred."   (*Id.* at 4).

Furthermore, Mitchell asserts that Kent was "not a subscriber to worker's compensation insurance."   (*Id.*).   At the time of the incident, Mitchell claims Kent was negligent in one or more of the following respects:

1. Failing to provide security gates/fencing around its premises to protect Mitchell from easy intrusion by criminals;
2. Failing to provide security guards on its premises to protect Mitchell from criminals;

3. Failing to provide security cameras to deter criminal activity on its premises;
4. Failing to provide adequate lighting on the premises to deter criminal activity;
5. Failing to use ordinary care to protect against an unreasonable and foreseeable risk of harm from the criminal acts of third parties;
6. Failing to take reasonable steps to protect against criminal activity of third parties;
7. Failing to assess the risk of criminal activity on its property and to take adequate safety measures to protect persons such as Mitchell, or to warn of the dangerous conditions;
8. Failing to warn Mitchell of the potential danger on the business premises.

(*Id*.).  According to Mitchell, each of the foregoing acts, alone or in combination with the others, constitutes negligence and a violation of Kent's duty of care to Mitchell, which proximately caused the occurrence in question, and Mitchell's damages.  (*Id*.).

In addition, Mitchell claims "[a]t the time of the incident, [Kent] was aware or should have been aware of the dangerous nature of the co-employee that sexually assaulted [Mitchell] and that the conditions as they existed for [Mitchell] to work alone were unsafe."  (*Id*.).  Mitchell alleges that Kent "did not follow safe practices and procedures to prevent the type of injuries which [Mitchell] sustained."  (*Id*. at 4–5).  Mitchell asserts that Kent "knew or should have known that [Mitchell] working and closing the store alone singularly or in combination with other factors created unreasonably dangerous conditions prior to the incident."  (*Id*. at 5).  Importantly, Mitchell alleges that Kent and its "respective authorized agents, servants, and employees were acting in the course and scope of their employment and were guilty of general negligence, negligence *per se*, and gross negligence toward" Mitchell.  (*Id*.).  Specifically, Mitchell claims Kent owed her "a non-delegable and/or ordinary duty of reasonable care, including but not limited to provide [Mitchell] with a safe place to work and to maintain safe practices, and that [Kent] breached such duties and was negligent through its acts and omissions[.]"  (*Id*.).

Kent's counterclaims for breach of policy and declaratory judgment against United Fire are based on United Fire's failure to defend Kent in regard to Mitchell's lawsuit against Kent.  Mitchell alleges that she suffered physical pain and suffering, mental anguish, and physical impairment as a result of a sexual assault by a co-employee of Kent that occurred in the course of Mitchell's

employment with Kent.  (Doc. 14-1).  Accordingly, the factual allegations and the origin of the damages asserted in Mitchell's lawsuit against Kent arise from bodily injury Mitchell sustained in the course of her employment by Kent while performing duties for Kent.

### 1.      Employer's Liability Exclusion

United Fire argues that the Employer's Liability Exclusion in United Fire's policies excludes coverage for the allegations against Kent in Mitchell's Amended Petition.  The Employer's Liability Exclusion in United Fire's Policies states that insurance coverage does not apply to:

> **Employer's Liability**
> "Bodily injury" to:
> (1)      An "employee" of the insured arising out of and in the course of:
> (a)      Employment by the insured; or
> (b)      Performing duties related to the conduct of the insured's business[.]

(Doc. 10 at Exs. A & B).  United Fire's CGL Policy defines "bodily injury" as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

(*Id*. at Ex. A).  United Fire's Umbrella Policy contains a similar definition of "bodily injury" to the one contained in the CGL Policy:

> "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury."

(*Id*. at Ex. B).

The Court finds there is no genuine dispute of material fact that Mitchell's Amended Petition alleges facts falling squarely within the Employer's Liability Exclusion in United Fire's Policies. Mitchell's Amended Petition reiterates all of the factual allegations set forth in her Original Petition, including: (1) the alleged sexual assault caused Mitchell physical pain and suffering, mental anguish, and physical impairment; (2) Mitchell was an employee of Kent at the time she was sexually assaulted; and (3) Mitchell was attacked and sexually assaulted by a co-employee of Kent while alone locking the store at closing time.  (*Id*.).  The Court finds that the Employer's Liability

8

Exclusion in the policies excludes coverage for the alleged claims or causes of action against Kent in

Mitchell's Amended Petition.  Specifically, United Fire has no duty to defend Kent in the underlying

lawsuit because the Employer's Liability Exclusion excludes coverage for the "bodily injury," which

Mitchell alleges she sustained in the course of her employment by Kent while performing duties for

Kent.

        **2.**       **Texas Abuse or Molestation Exclusion**

     In addition, the Texas Abuse or Molestation Exclusion in United Fire's policies states in

relevant part:

> This insurance does not apply to "bodily injury". . . arising out of:
> **1.**     The actual or threatened abuse or molestation by anyone of any person while
>        in the care, custody, or control of any insured, or
> **2.**     The negligent:
>        **a.**     Employment;
>        **b.**     Investigation;
>        **c.**     Supervision; or. . .
>        **e.**     Retention;
>        of a person for who any insured is or ever was legally responsible and whose
>        conduct would be excluded by Paragraph **1.** above.
>
>        For the purposes of this endorsement, abuse means an act which is committed
>        with the intent to cause harm.

(Doc. 10 at Exs. A & B).

     Mitchell's Amended Petition alleges that Kent was sexually assaulted by a co-worker while

Mitchell was employed by Kent and performing duties in the course and scope of her employment.

(Doc. 14-1).   In addition, the Amended Petition claims Kent was negligent in employment,

investigation, supervision and retention of the co-employee who allegedly sexually abused and

molested Mitchell.  (*Id.*).  Specifically, Mitchell states Kent was negligent in employing a dangerous

person, failing to take action concerning the dangerousness of its employees, failing to provide

adequate supervision, and failing to terminate the dangerous employee and prevent his entry onto the

premises.  (*Id.*).

The Court finds that Mitchell was under the control of Kent at the time of the alleged sexual assault.  The policies do not define the term "control," and therefore, the Court must interpret the term in accordance with its generally accepted or commonly understood meaning.  *Mid–Continent Cas. Co. v. Brock,* No. 10–20726, 2011 WL 4807715, at *2 (5th Cir. Oct. 11, 2011).  Texas courts have held that "control" means the "power or authority to manage, direct, govern, administer or oversee."  *See Am. Fidelity & Cas. Co. v. Traders & General Ins. Co*., 334 S.W.2d 772, 775 (Tex. 1959); *H. C. Price Co. v. Compass Ins. Co.,* 483 F. Supp. 171, 175 (5th Cir. 1980).

Mitchell's petition alleges that she was employed by Kent as a store clerk, and while alone locking the store at closing time, she was attacked and sexually assaulted by a co-employee of Kent. (Doc. 14-1).  At the time of the alleged sexual assault, Mitchell was in the care, custody or control of Kent because she was locking the store at closing time as directed to do by her employer, Kent. There are no allegations to indicate that Mitchell had any discretion as to whether she could leave the store unlocked at closing time.  Moreover, with respect to Mitchell's co-employee, Mitchell alleges in her Amended Petition that Kent and its "respective authorized agents, servants, and employees were acting in the course and scope of their employment[.]" (Doc. 14-1 at 5).  Therefore, there is no genuine dispute of material fact that Mitchell alleges she and the co-employee were under the control of Kent at the time of the purported sexual assault.

Kent contends that the Texas Abuse or Molestation Exclusion does not preclude a duty to defend because Mitchell's petition does not allege "abuse," "molestation," or "intent."  (Doc. 12 at 5).  "Abuse" is defined in the policies to mean "an act which is committed with the intent to cause harm."  (Doc. 10 at Exs. A & B).  Again, the Court must interpret the undefined terms in accordance with their generally accepted or commonly understood meaning.  *Mid–Continent Cas. Co.*, 2011 WL 4807715, at *2.  A generally-accepted legal definition of "molest" is "to annoy, disturb or persecute

especially with hostile intent or injurious effect" or "to make annoying sexual advances. . . to force physical and usually sexual contact[.]"[1]

Mitchell alleges she sustained personal injuries including physical pain and suffering and physical impairment as the result of a sexual assault by her co-employee in the course of her employment with Kent.  (Doc. 14-1).  There is no genuine issue of material fact that Mitchell alleges a co-employee's intent to cause harm, unwanted sexual advances, and forced physical or sexual contact, which meet the definition of abuse or molestation.  As such, the Amended Petition alleges Mitchell was abused or molested while Mitchell was under the control of her employer, Kent. Therefore, the factual allegations of Mitchell's Amended Petition establish the applicability of the Texas Abuse or Molestation Exclusion and preclude United Fire from having any duty to defend Kent in the Mitchell lawsuit.

> ### 3.        New Claims Asserted in Mitchell's Amended Petition

While Paragraph V. of the Amended Petition adds new allegations pertaining to Kent's duties with respect to premises liability, these allegations do not prevent the application of the Employer's Liability or Texas Abuse or Molestation Exclusions.   Significantly, the Employer's Liability Exclusion excludes all bodily injury to Mitchell arising out of the course of her employment by Kent or the performance of her duties related to Kent's business, regardless of the specific acts or omissions that caused the injury.  Likewise, the Texas Abuse or Molestation Exclusion excludes all of Mitchell's bodily injury sustained as a result of alleged abuse or molestation while under the control of Kent, regardless of the specific nature of Kent's acts or omissions.

Whether Mitchell's bodily injury and damages resulted from Kent's negligence, work conditions, premises liability, violations of the Texas Labor Code, or some other cause is irrelevant. Mitchell alleges the damages and bodily injury she sustained arose out of and in the course of

---

[1] *Molest*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/molestation (last visited Jan. 16, 2018).

employment with Kent and in performing duties for Kent.  (Doc. 14-1).  Therefore, as a matter of law, United Fire has no duty to defend Kent from Mitchell's lawsuit.

**B.     Duty to Indemnify**

Next, United Fire seeks a declaration that it does not have a duty to indemnify Kent for any damages against Kent in favor of Mitchell in the underlying state court lawsuit.  (Doc. 9).  "[T]he duty to indemnify is justiciable before the insured' liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate a duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."  *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).  Here, the Court finds that the factual allegations in the Amended Petition triggering the application of the Employer's Liability and Texas Abuse or Molestation Exclusions also preclude a duty to indemnify.  If Mitchell proves she is an employee who was injured and sustained damages when she was assaulted by her co-worker, then she can recover damages from Kent but United Fire will have no duty to indemnify as a result of the Employer's Liability and Texas Abuse or Molestation Exclusions.

Because there is no genuine dispute of material fact that Mitchell alleges she sustained bodily injury while an employee of Kent in the course of her employment with Kent, the Employer's Liability Exclusion in United Fire's policies precludes United Fire from having a duty to indemnify Kent from any judgment Mitchell may obtain against Kent.  Likewise, the Texas Abuse or Molestation Exclusion specifically excludes coverage for Mitchell's bodily injury claims arising from the alleged sexual assault in the course of her employment by Kent.  Therefore, United Fire does not owe Kent any duty to indemnify.

**C.     Punitive or Exemplary Damages**

United Fire's policies issued to Kent include a Punitive or Exemplary Damages Exclusion which states in relevant part that "[r]egardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages."  (Doc. 10 at Ex. A).  Mitchell's Amended Petition

prays "for all of the damages alleged, including exemplary damages[.]"  (Doc. 14-1).  There is no genuine dispute of material fact that Mitchell seeks exemplary damages from Kent and such a demand is excluded by the Punitive or Exemplary Damages Exclusion in United Fire's policies. Therefore, as a matter of law, United Fire is entitled to summary judgment that it owes Kent no duty to defend or indemnify from any judgment for punitive or exemplary damages.

### D.      Kent's Counterclaims

Kent brings a counterclaim for breach of policy resulting from United Fire's failure to defend and indemnify Kent in the Mitchell lawsuit in violation of the CGL Policy and Umbrella Policy.  In addition, Kent seeks a declaratory judgment that United Fire has a duty to defend and indemnify Kent to the extent of any recovery by Mitchell.  Here, there is no evidence to support Kent's counterclaims because, as discussed above, United Fire has no duty to defend or indemnify Kent in the underlying lawsuit.  Kent has no evidence of breach, causation, and injury to support its claim for breach of policy because United Fire's policies do not provide coverage for Mitchell's allegations against Kent.  Because Kent's counterclaims for breach of policy and declaratory judgment are premised on United Fire's alleged wrongful denial of coverage, the Court holds that there is no genuine dispute with respect to these counterclaims.  Therefore, the Court **GRANTS** United Fire's Motion for Summary Judgment and **DISMISSES** Kent's counterclaims.  (Doc. 9).

### IV.      CONCLUSION

In sum, United Fire does not have a duty to defend Kent in the Mitchell lawsuit as a result of the Employer's Liability Exclusion and the Texas Abuse or Molestation Exclusion in the policies at issue.  Likewise, Kent failed to meet its burden of raising a genuine dispute of material fact with respect to United Fire's alleged duty to indemnify Kent in the underlying lawsuit.  In addition, United Fire is entitled to summary judgment that it owes Kent no duty to defend or indemnify Kent from any judgment for punitive or exemplary damages as a result of the Punitive or Exemplary Damages Exclusion in policies.  Finally, there is no evidence to support Kent's counterclaims for

breach of policy and declaratory judgment.  For these reasons, the Court **GRANTS** United Fire's Motion for Summary Judgment and **DECLARES** that United Fire does not have a duty to defend or indemnify Kent in the Mitchell lawsuit for any damages, interest, or costs assessed against Kent in favor of Mitchell.

It is therefore **ORDERED** that United Fire's Motion for Summary Judgment is hereby **GRANTED**.  (Doc. 9).  The Court **DECLARES** that United Fire & Casualty Company does not have a duty to defend Kent Distributors Incorporated in the Mitchell lawsuit, Cause No. CV52563 in the 238th Judicial District Court of Midland County, Texas, and United Fire & Casualty Company does not have a duty to indemnify Kent Distributors Incorporated for any damages, interest, or costs assessed in favor of Shlana Mitchell.

It is further **ORDERED** that Kent's counterclaims for breach of policy and declaratory judgment against United Fire are **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

SIGNED this 17th day of January, 2018.

ROBERT JUNELL
SENIOR U.S. DISTRICT JUDGE